UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED
FEB 02 2023
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.                                    INDICTMENT NO. 5:23-CR-9-DCR-MAS

JOSE ALZADON, M.D.,
KRISTY BERRY,
MICHAEL BREGENZER and
BARBIE VANHOOSE

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

1. **JOSE ALZADON, M.D.**, was a licensed medical doctor in Kentucky and worked at a series of clinics known as, among other names, Kentucky Addiction Centers ("KAC"). KAC purported to treat patients for opioid addiction. KAC was located in Winchester, Clark County, Kentucky, among other locations.

2. **KRISTY BERRY** and **MICHAEL BREGENZER** were owners of KAC.

3. **BARBIE VANHOOSE** was a billing manager at KAC.

4. Doctor-1 was a medical doctor also employed by KAC.

**BACKGROUND ON HEALTH CARE BENEFIT PROGRAMS**

5. The Medicare Program ("Medicare") was a federal "health care benefit program," as defined by 18 U.S.C. § 24(b), that provided benefits to persons who were over the age of sixty-five or disabled. Medicare was administered by the United States

Department of Health and Human Services through its agency, the Centers for Medicare & Medicaid Services ("CMS"). Individuals who qualified for Medicare benefits were commonly referred to as "beneficiaries," and as beneficiaries, they were eligible to receive a variety of goods and services.

6. The Kentucky Medicaid Program ("Medicaid") was a "health care benefit program," as defined by 18 U.S.C. § 24(b), that provided benefits to Kentucky residents who met certain eligibility requirements, including income requirements. Medicaid was jointly funded by federal and state sources. Individuals who qualified for Medicaid benefits were commonly referred to as "members," and as members, they were eligible to receive a variety of goods and services.

7. Medical service providers, like clinics and physicians, could enroll in Medicare and Medicaid to provide services to Medicare beneficiaries and Medicaid members. Upon Medicare and Medicaid enrollment, service providers were permitted to provide medical services and items to beneficiaries and members, and subsequently submit claims to Medicare and Medicaid, through fiscal intermediaries, seeking reimbursement for the cost of services and items provided.

8. When seeking reimbursement from Medicare and Medicaid, service providers certified that: (a) the contents of the claim forms were true, correct, and complete; (b) the claim forms were prepared in compliance with the laws and regulations governing Medicare and Medicaid; and (c) the services purportedly provided, as set forth in the claim forms, were medically necessary.

9. Medicare, Medicaid, and other health care benefit programs reimbursed claims submitted by service providers if the services and items provided were medically necessary for the diagnoses and treatment of beneficiaries and members; were in fact provided to beneficiaries and members; and were based on representations from providers that were true, correct, and complete.

10. Conversely, Medicare and Medicaid did not cover and would not reimburse claims for services and items that were not medically necessary, not in fact provided, or not based on claim forms that were true, correct, and complete.

**BACKGROUND ON HEALTH CARE BILLING CODES FOR OFFICE VISITS**

11. The American Medical Association assigned and published numeric codes used to describe medical procedures performed by service providers commonly referred to as Current Procedural Terminology or "CPT" codes. CPT codes were intended to accurately identify, simplify, and standardize billing for medical services. CMS reimbursed providers specific amounts, which were determined by CMS based on, among other factors, the work involved in the procedure and the complexity of the procedure. Service providers used specific CPT codes to describe the services that they claimed were provided, and health care benefit programs, including Medicare and Medicaid, relied on the submitted CPT codes to decide whether to issue or deny reimbursement.

12. Specific CPT codes were assigned to office visits, with different codes delineating certain aspects of the office visit, including type, complexity, and duration. Medicare, Medicaid, and other health care benefit programs reimbursed service providers at increasing rates based upon the level of complexity indicated by the CPT code used to

describe the office visit. The higher number codes were generally reserved for more complex and longer office visits.

13. At the times indicated in the below table and as relevant here, CPT codes 99213 and 99214 provided in relevant part:

| CPT Code | Before January 1, 2021 | After January 1, 2021 |
|---|---|---|
| 99213 | Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 components: (a) an expanded problem-focused history; (b) an expanded problem-focused examination; (c) medical decision-making of low complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of low to moderate severity. Physicians typically spend 15 minutes face-to-face with the patient and/or family. | Office or other outpatient visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and low level of medical decision making. When using time for code selection, 20-29 minutes of total time is spent on the date of the encounter. |
| 99214 | Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components: (a) a detailed history; (b) a detailed examination; (c) medical decision-making of moderate complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the | Office or other outpatient visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and moderate level of medical decision making. When using time for code selection, 30-39 minutes of total time is spent on the date of the encounter. |

| CPT Code | Before January 1, 2021 | After January 1, 2021 |
|---|---|---|
|  | patient's and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. Physicians typically spend 25 minutes face-to-face with the patient and/or family. |  |

14. For reimbursement from Medicare or Medicaid, an office visit should have been billed according to the standards outlined in the above table. If an office visit was billed at a higher level than what occurred during the visit, that office visit was "upcoded" or coded at a higher level than warranted for the visit.

15. Health care benefit programs like Medicare and Medicaid would not knowingly reimburse for upcoded claims.

## BACKGROUND ON CONTROLLED SUBSTANCES

16. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States.

17. Under the CSA, the United States Drug Enforcement Administration ("DEA") regulated certain pharmaceutical drugs designated as controlled substances because of their potential for abuse or dependence, their accepted medical use, and their accepted safety for use under medical supervision. *See* 21 U.S.C. § 802(6).

18. The CSA and DEA regulations categorize controlled substances into different schedules, from Schedule I through V, according to their abuse potential and recognized legitimate medical use.

19. Some controlled substances, such as Suboxone, which is a Schedule III controlled substance, can be used in the treatment of opioid use disorder.

20. The DEA issued registration numbers to qualifying practitioners, including physicians, which permitted them to dispense controlled substances consistent with the terms of that registration. *See* 21 U.S.C. § 822.

21. **ALZADON** and Doctor-1 were registered with the DEA to prescribe controlled substances and did prescribe such substances, including Suboxone, through their work at KAC.

22. 21 U.S.C. § 841(a)(1) made it unlawful for any person to "distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An exception to this prohibition existed for medical practitioners who prescribe certain controlled substances for a legitimate medical purpose in the usual course of professional practice. *See* 21 C.F.R. § 1306.04(a). But that exception did not apply to practitioners who knew they were acting in an unauthorized manner or intended to so act.

23. 21 U.S.C. § 843(a)(2) prohibited any person from knowingly and intentionally using "in the course of the . . . distribution[] or dispensing of a controlled substance, . . . a registration number which . . . is issued to another person."

24. 21 U.S.C. § 843(a)(4)(A) prohibited any person from knowingly and intentionally furnishing "false or fraudulent material information in, or omitt[ing] any material information from, any application, report, record, or other document required to be made, kept, or filed" pursuant to the CSA.

25. Regulations promulgated by the DEA allowed for providers to prescribe certain controlled substances electronically, as opposed to on paper prescriptions. A practitioner had to authenticate an electronic prescription using two of the following three methods: (1) "a password or response to a challenge question," (2) a "biometric" marker such as "a fingerprint or iris scan," or (3) "a device" such as a "hard token" that is "separate from the computer to which the practitioner is gaining access." 21 C.F.R. § 1311.115(a).

26. The electronic-prescribing regulations required that the practitioner "must retain sole possession of the hard token, where applicable, and must not share the password or other knowledge factor, or biometric information, with any other person." 21 C.F.R. § 1311.102(a).

27. The same regulations stated: "The practitioner must not allow any other person to use the token or enter the knowledge factor or other identification means to sign prescriptions for controlled substances." *Id.* And under the same regulations, a practitioner was required to notify the DEA if a token had been stolen or the two-factor authentication protocol for authorizing prescriptions had been otherwise compromised. *Id.* § 1311.102(b).

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

28. Paragraphs 1 through 15 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

29. Beginning at least in or around October 2017, and continuing through at least in or around January 2021, in Clark County and Johnson County, in the Eastern District of Kentucky, and elsewhere,

**JOSE ALZADON, M.D.,
KRISTY BERRY,
MICHAEL BREGENZER and
BARBIE VANHOOSE**

did knowingly and willfully, combine, conspire, confederate, and agree with others, known and unknown to the grand jury, to commit an offense against the United States, that is: to execute a scheme and artifice to defraud a health care benefit program, as defined in 18 U.S.C. § 24(b), that is Medicaid, Medicare, and other health care benefit programs, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of 18 U.S.C. § 1347.

30. It was a purpose of the conspiracy for **ALZADON, BERRY, BREGENZER** and **VANHOOSE** to unlawfully enrich themselves and to unlawfully enrich KAC.

31. In furtherance of the conspiracy and to accomplish its objects and purpose, the methods, manner, and means included that **ALZADON, BERRY, BREGENZER** and **VANHOOSE** billed or caused others to bill for health care services that represented that Doctor-1 had provided services to Medicaid members, when in fact Doctor-1 had not provided such services.

32. In furtherance of the conspiracy and to accomplish its objects and purpose, the methods, manner, and means included that **ALZADON, BERRY, BREGENZER** and **VANHOOSE** concealed their fraudulent billing in the name of Doctor-1 including by

creating or directing the creation of false medical records that represented that Doctor-1 had provided medical services to the Medicaid members, when in fact Doctor-1 had not provided such services.

33. In furtherance of the conspiracy and to accomplish its objects and purpose, the methods, manner, and means included that **ALZADON, BERRY, BREGENZER** and **VANHOOSE** billed or caused others to bill for medical services to Medicaid, Medicare, and other health care benefit programs that were not provided or were upcoded, including but not limited to office visits billed under CPT codes 99213 and 99214.

All in violation of 18 U.S.C. § 1349.

## COUNTS 2-12
### Health Care Fraud
### (18 U.S.C. §§ 1347, 2)

34. Paragraphs 1 through 15 and 30 through 33 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

35. Beginning at least in or around October 2017, and continuing through at least in or around January 2021, in Clark County and Johnson County, in the Eastern District of Kentucky, and elsewhere,

**JOSE ALZADON, M.D.,
KRISTY BERRY,
MICHAEL BREGENZER and
BARBIE VANHOOSE**

did knowingly and willfully execute, and attempt to execute, a continuing scheme or artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, Medicaid, Medicare, and other health care benefit programs, and to

obtain, by means of materially false and fraudulent pretenses, representations, and promises, and omission and concealment of material facts, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

36. The scheme to defraud is more fully described in paragraphs 30 through 33 of this Indictment.

37. In execution of, and in attempting to execute, the scheme, **ALZADON, BERRY, BREGENZER** and **VANHOOSE** knowingly submitted, or caused to be submitted, claims for payment to health care benefit programs for medical services that were not medically necessary and were falsely billed in the name of Doctor-1, including but not limited to the office visits billed using the following CPT codes that are further detailed in the table below:

| Count | Beneficiary/ Member | Approximate Date of Service | CPT Code Billed |
| --- | --- | --- | --- |
| 2 | KT | 5/10/18 | 99213 |
| 3 | KT | 6/20/19 | 99214 |
| 4 | KT | 1/21/21 | 99213 |
| 5 | GB | 4/2/18 | 99213 |
| 6 | GB | 10/8/18 | 99213 |
| 7 | AC | 9/20/18 | 99213 |
| 8 | HM | 6/27/19 | 99214 |
| 9 | HM | 12/12/19 | 99214 |
| 10 | RB | 6/14/19 | 99214 |
| 11 | RB | 12/12/19 | 99214 |
| 12 | SB | 8/30/18 | 99213 |

Each in violation of 18 U.S.C. §§ 1347 & 2.

## COUNT 13
### Conspiracy to Unlawfully Distribute a Controlled Substance
### (21 U.S.C. § 846)

38. Paragraphs 1 through 4 and 16 through 27 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

39. Beginning at least in or around October 2017, and continuing through at least in or around April 2022, in Clark County and Johnson County, in the Eastern District of Kentucky, and elsewhere,

**JOSE ALZADON, M.D.,
KRISTY BERRY,
MICHAEL BREGENZER and
BARBIE VANHOOSE**

did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the grand jury to distribute and dispense quantities of controlled substances, including Suboxone, in a manner they knew was unauthorized.

40. In furtherance of the conspiracy and to accomplish its objects and purpose, the methods, manner, and means included that **ALZADON, BERRY, BREGENZER** and **VANHOOSE** knowingly and intentionally used or caused others to use the DEA registration issued to Doctor-1 for controlled substance prescriptions that were not authorized by Doctor-1 and were in fact only authorized by **ALZADON**, in violation of 21 U.S.C. §§ 841(a)(1), 843(a)(2), and 843(a)(4)(A).

41. In furtherance of the conspiracy and to accomplish its objects and purpose, the methods, manner, and means included that **ALZADON, BERRY, BREGENZER** and **VANHOOSE** knowingly and intentionally possessed or caused other KAC personnel to

possess electronic tokens that were required to remain in the possession of KAC medical personnel who were prescribing controlled substances, including **ALZADON** and Doctor-1. **ALZADON, BERRY, BREGENZER** and **VANHOOSE** then allowed or directed KAC personnel who were not authorized to possess the tokens and were prohibited from approving electronic controlled substance prescriptions to use the tokens to electronically authorize such controlled substance prescriptions, in violation of 21 U.S.C. §§ 841(a)(1), 843(a)(2), and 843(a)(4)(A).

42. In furtherance of the conspiracy and to accomplish its objects and purpose, the methods, manner, and means included that **VANHOOSE** attempted to conceal the existence of this conspiracy by falsely stating to law enforcement in or around April 2022 that KAC providers maintained tokens on their person and that the tokens were not in the possession of unauthorized personnel.

All in violation of 21 U.S.C. § 846.

## FORFEITURE ALLEGATIONS

1. Upon conviction of the offenses charged in Count 1-12 in this Indictment, the same being punishable by imprisonment for more than one year, **JOSE ALZADON, M.D., KRISTY BERRY, MICHAEL BREGENZER** and **BARBIE VANHOOSE** shall forfeit to the United States of America any property constituting, or derived from, any proceeds they obtained, directly or indirectly, as a result of the fraud violations and any property used, or intended to be used, in any manner to commit, or to facilitate the commission of such violations, pursuant to 21 U.S.C. § 982(a)(7).

2. Upon conviction of the offense charged in Count 13 in this Indictment, the same being punishable by imprisonment for more than one year, **JOSE ALZADON, M.D., KRISTY BERRY, MICHAEL BREGENZER** and **BARBIE VANHOOSE** shall forfeit to the United States of America any property constituting, or derived from, any proceeds they obtained, directly or indirectly, as a result of the controlled-substances violations and any property used, or intended to be used, in any manner to commit, or to facilitate the commission of such violations, pursuant to 21 U.S.C. § 853.

3. The property to be forfeited that is related to the aforesaid violations includes, but is not limited to, any DEA license(s) for **JOSE ALZADON, M.D.**

4. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty;

the defendants shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

All pursuant to 21 U.S.C. § 853(a), 18 U.S.C. § 982(a)(7), and 28 U.S.C. § 2461(c).

A TRUE BILL

███████████████████████

FOREPERSON

_____
CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

_____
GLENN S. LEON
CHIEF, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

## **PENALTIES**

**COUNTS 1-12:**   Not more than 10 years imprisonment, a fine of not more than $250,000 or the greater of twice the gross gain or twice the gross loss, and supervised release of not more than 3 years.

**COUNT 13:**   Not more than 5 years imprisonment and a fine of not more than $250,000.

**PLUS:**   Mandatory special assessment of $100 per count.

**PLUS:**   Restitution, if applicable.

**PLUS:**   Forfeiture as listed.