UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

\- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | : Docket No. 25-cr-43 |
| Plaintiff, | : Lexington, Kentucky<br>: Wednesday, January 21, 2026<br>: 10:00 a.m. |
| v. | : |
| BARBIE VANHOOSE, | : |
| Defendant. | : |

\- - -

TRANSCRIPT OF SENTENCING
BEFORE KAREN K. CALDWELL
UNITED STATES DISTRICT COURT JUDGE

\- - -

APPEARANCES:

For the United States: SARAH ELIZABETH EDWARDS, ESQ.
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005

For the Defendant: MICHAEL J. CURTIS, ESQ.
Curtis Legal Services
1455 Winchester Avenue
Suite 708
Ashland, Kentucky 41105

Court Reporter: LAUREN I. GOOTEE, RMR, CRR
Official Court Reporter
101 Barr Street
Lexington, Kentucky 40507
(859) 469-7459

Proceedings recorded by mechanical stenography, transcript produced by computer.

(Proceedings commenced in open court at 10:05 a.m.)

THE COURT: Good morning.

Would the clerk please call the matter to come before the Court.

COURTROOM DEPUTY: Yes, Your Honor.

Lexington Criminal Action Number 25-43, United States of America versus Barbie Vanhoose, called for sentencing.

THE COURT: Would the United States make its appearance for the record.

MS. EDWARDS: Good morning, Your Honor. Sara Edwards on behalf of the United States. And with me at counsel table is Senior Advisor Chip Goff of the Department of Labor.

THE COURT: Thank you very much. Good morning.

Would the defense make its appearance for the record.

MR. CURTIS: Yes, Your Honor. Good morning. Mike Curtis here with Barbie Vanhoose.

THE COURT: Ms. Vanhoose. Mr. Curtis.

This matter is called on for a sentencing hearing.

Has the United States received and reviewed the presentence report and all related materials?

MS. EDWARDS: Yes, Your Honor.

THE COURT: I didn't see any objections. Are there any you'd raise today?

MS. EDWARDS: There are not, Your Honor.

THE COURT: Very well.

Mr. Curtis, have you and Ms. Vanhoose received the presentence report and all the related material?

MR. CURTIS: We have, Your Honor.

THE COURT: I see that there are two unresolved objections that you have filed, which I'll address momentarily. Are there any others you would have me address today?

MR. CURTIS: Judge, it's my understanding, after talking with the government, that the two theft of identity cases, that they can run concurrent.

THE COURT: Yes, they can.

MR. CURTIS: So, you know, we can make this really short if you just give her a sentence of two years.

THE COURT: I understand.

To make our record clear, let's be sure that we've addressed these objections.

The first one is to the base offense level in paragraph 48, and that is to the 18-level increase based on the loss amount. And I think I understand your objection.

Do you want to speak to it further, Mr. Curtis?

MR. CURTIS: Not really, Your Honor, other than, I think the whole key to my objection is the foreseeability.

THE COURT: All right. I understand.

Ms. Edwards.

MS. EDWARDS: Yes, Your Honor. The government agrees

with the calculation put forward in the PSR. We believe for the reasons that are listed in Probation's response to defendant's objection that this is a conservative loss calculation and that the evidence at trial showed that Ms. Vanhoose, as the billing manager, was well aware of the use of the three particular codes that were used to calculate this loss amount.

THE COURT: The Court is persuaded by the probation office's response along with the government's response, and I will overrule the objection for the reasons stated therein.

The second objection is that the defendant should be entitled to a mitigating role adjustment.

I think I understand your objection, Mr. Curtis, but would you like to say anything further in support of it?

MR. CURTIS: No, Your Honor.

THE COURT: Okay.

Ms. Edwards, anything in addition to what the government has previously provided?

MS. EDWARDS: Not in addition, Your Honor.

THE COURT: All right. I am persuaded by the government and the probation office's response. I don't think the defendant qualifies for a mitigating role reduction as stated in the response. Therefore, I'll overrule that objection as well.

Now, I don't believe the third objection requires a

ruling. That says that Ms. Vanhoose denies having cash on hand. I'll take note of that objection, but it doesn't require a ruling.

The Court, having addressed the objections, will adopt the factual findings and the advisory guideline applications set forth in the presentence report. Accordingly, the Court determines that the appropriate advisory guideline range for this defendant is from 53 to 63 months on Counts 1 and 4 and 11, 24 months on Counts 12 and 13, which must run consecutive to any sentence imposed on all other counts, and 48 months on Count 14 based on a total offense level of 24 and a criminal history category of I.

Are there any motions from the United States?

MS. EDWARDS: No motion, Your Honor. But just if I may clarify for the record. I believe the level 24 guidelines range is 51 to 63 months.

THE COURT: I think I said that.

MS. EDWARDS: I may have misheard, Your Honor. I thought you said 53. And I apologize if I --

THE COURT: I think I did, but it is 51 to 63. So I'll clarify that if I was wrong. Thank you very much.

The Court has received a number of letters in support of Ms. Vanhoose, which I have read and will give appropriate weight. I have considered the sentencing memorandum filed by Mr. Curtis.

Ms. Vanhoose, I'm going to hear from the lawyers in just a minute, but before I do, is there anything you'd like to say to the Court?

THE DEFENDANT: Do I go up there?

THE COURT: You may if you want to.

THE DEFENDANT: Okay. I'm coming up there.

THE COURT: I'd do what Mr. Curtis told me, I believe.

THE DEFENDANT: First of all, Your Honor, I want to thank you for everything that you've done for me and my family during the trial. The Court did help provide for us for housing, or I wouldn't have been able to stay up here. I would have had to drive back and forth, which is a good two hours one way. So I appreciate that very much.

Also, thank you for your understanding during the trial where I had that medical issue. My IBS was acting up and I had to -- I appreciate your understanding of that as well.

This has been a learning experience all the way around. I have since retired, so I do not have any further needs or want to get out into the workforce ever again, so that would never happen. I do appreciate the jury's time and their decision. I respect it. But all I want to do is I just want to -- I'm retired and I want to live my retirement years the best that I can.

Living in the Paintsville area, it is not like Lexington.

It's very impoverished, if you would, but that's where I do want to spend the rest of my life and just be there with my husband, raise my garden, put my dogs out. We do live paycheck to paycheck, and it does take both of our Social Security checks to meet the bills.

So I appreciate your time, and I'm sorry that I'm here.

THE COURT: Thank you very much. You may be seated.

Mr. Curtis.

MR. CURTIS: Judge, I'm not going to elaborate a whole lot. You heard all the evidence, and you heard the testimony as it related to Ms. Vanhoose.

I've gotten to know Ms. Vanhoose and her husband quite well during this ordeal for them, and I've even had the opportunity to visit their house. Although the jury found her guilty of this crime, she did not receive any benefit. Her standard of living did not increase whatsoever. In fact, it remained the same.

I mean, where she lives, it's like in a coal camp where you have all these houses right next to each other, very small and compacted. But she's happy there. And she received no benefit like Mr. Bregenzer, like Ms. Berry who testified against her, like Dr. Alzadon and the rest of the people, the unindicted co-conspirators, so to speak.

What we're asking the Court to do is to take her involvement and then fashion a sentence that would be just,

that would promote respect, and at the same time would act as a deterrent under 18 U.S.C. 3553(a) and its subsections.

I'm not going to stand here and ask the Court that this sentence should be such because I think that's an invasion of your discretion when I'm asking you to do something that's contrary, because you have the keys to what the sentence will be.

And the main thing that I'm asking is what was her gain in this? And I can tell you that her only gain was a job, and that was the reason why she stands here today before you. I'm asking the Court to give a variance if you feel like it's appropriate under the guidelines, and I'm asking that the sentence be fair and just.

And lastly, she's advised me that she would like to report to Alderson, the women's facility there in West Virginia, which I have been to and it's very, very appropriate.

THE COURT: Thank you.

MR. CURTIS: Thank you, Your Honor.

THE COURT: Ms. Edwards.

MS. EDWARDS: Thank you, Your Honor.

The government does not have anything to add to the sentencing submission that we've provided the Court through ECF, except to say that we take Mr. Curtis's point regarding Ms. Vanhoose's circumstances and gain from the crime, and that

is why I'm not asking Your Honor for any forfeiture related to Ms. Vanhoose this morning. The government's position will be different in the coming weeks for the other defendants.

THE COURT: Thank you, Ms. Edwards.

You know, we all sat through a lengthy trial here, and there is no question that this was a very, very serious crime, and the jury was convinced that this defendant played some role in it. This defendant, however, is very different than her co-defendants. Although she participated in the scheme, as Mr. Curtis points out, other than a job, she really didn't get anything for it. Maybe her loyalty was misplaced. Maybe her desperation for income drove her to participate and perpetuate what others were imposing. She was not a stakeholder in this scheme and stood to gain nothing other than continued employment as a bookkeeper essentially and an office manager.

This Court takes this crime very seriously. It is indeed a serious one. Healthcare reimbursements are complicated, and maintaining the integrity of the healthcare reimbursement system is very important. In this case, I don't think the defendant needs any drug treatment or any kind of psychological treatment, but we really need to fashion a sentence that promotes respect for the law, that provides just punishment, and provides some general deterrence.

I think that it's easy to go along and get along in the

world, and when you see what's going on around you and you don't stand up and stop it, you do have some culpability.

I recall Ms. Vanhoose's voice on a tape when she said to Kristy Berry, "I'm not going to go to jail for you." That shows that she knew what was going on, and yet she could not find the strength to stop it. Therefore, some punishment is just. But again, this Court will temper justice with mercy in this case.

Accordingly, it's the judgment of this Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of time served on each of Counts 1, 4 through 11 and 14 to run concurrently and 24 months on Counts 12 and 13 to run concurrently with each other but consecutively to all of the other counts for a total term of 24 months.

The Court believes that this rather extreme showing of mercy can be compensated for by imposing the maximum period of supervised release. So upon release from prison, Ms. Vanhoose, you will be on supervised release for a term of three years on each of Counts 1 and 4 through 11 and one year on each of Counts 12 and 14, all to run concurrently for a total term of three years.

The Court has conducted an individualized assessment of this and believes that this period of supervised release will combine with what I consider to be a merciful sentence,

provide a just punishment, and specifically allow the Court to address the need to provide restitution to any of the victims on this case.

Now, within 72 hours of your release from the custody of the Bureau of Prisons, Ms. Vanhoose, you must report in person to the probation office in the district to which you're released.

While you are on supervised release, you shall not commit another federal, state, or local crime. You must comply with the mandatory and standard conditions that have been adopted by this Court along with the following:

You must not possess a firearm, destructive device, ammunition, or a dangerous weapon. I'm going to suspend the drug testing conditions that are ordinarily statutorily imposed because I don't see a risk of future substance abuse.

Also, you must comply with the following additional conditions that have been adopted by this Court.

Now, restitution is --

Are you asking for restitution in the amount of $256,847.88 to Medicare and $556,033.21 to Medicaid, Ms. Edwards?

MS. EDWARDS: We are for Ms. Vanhoose for it to be joint and several with her co-defendants.

THE COURT: Very well. Restitution will be imposed in the amounts that I just addressed, and that will be joint

and several with all other co-defendants. Any balance outstanding upon commencement of incarceration can be paid in accordance with the Federal Inmate Financial Responsibility Program. And any outstanding balance owed upon the commencement of supervision shall be paid according to further orders of this Court.

Now, during your period of supervised release, you shall not work in any healthcare-related field in terms of a financial responsibility.

Based on your current financial situation, the Court is not going to impose a fine. It's ordered that you must pay the United States $1,200. That is the special assessment. That's due immediately.

The Court finds that this defendant has been completely compliant with all the conditions of her bond. The defendant shall report to the institution designated by the United States Bureau of Prisons not later than 2:00 p.m. on March 17th, 2026, and the Court will recommend Alderson, West Virginia.

Now, Ms. Vanhoose, there's one thing I need to warn you about in terms of allowing you to self-report in March. First, your conditions of bond will continue to apply, and the consequences will apply as well.

Do you understand?

THE DEFENDANT: I'm sorry, what?

THE COURT: Your conditions of bond, the bond conditions you've been under, they will continue to apply until you self-report.

Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: And then secondly, failure to report for service of a sentence as directed is a separate federal crime for which you could be prosecuted and convicted.

Do you understand?

THE DEFENDANT: I do. No worries about that.

THE COURT: Okay. So you need to be where you've got to be when you're supposed to be there. Probation and Mr. Curtis are going to keep you well advised.

THE DEFENDANT: As you've seen through all of this, I do what I'm instructed to do.

THE COURT: Thank you very much. You may be seated.

Is there any legal reason sentence should not be imposed as stated for the United States, Ms. Edwards?

MS. EDWARDS: There is no legal reason, Your Honor. The government would note for the record that Ms. Vanhoose and her counsel have been served today with a letter from the Department of Labor, and so in addition to the conditions Your Honor just listed as to supervised release, I do not think this will be an issue as Ms. Vanhoose is now retired, but she is not permitted to administer any federal employee

benefit programs, and she has a letter explaining that.

THE COURT: Very well. Thank you for clarifying that.

Mr. Curtis?

MR. CURTIS: No objections. And what the government says, she has been served and she will definitely comply with that.

THE COURT: Very well. I will incorporate the terms of that letter into the terms of her supervised release.

Is there any objection to that, Mr. Curtis?

MR. CURTIS: No, Your Honor.

THE COURT: Ms. Edwards?

MS. EDWARDS: No, Your Honor. And we can provide the Court with a copy.

THE COURT: If you'll do that as well. We'll incorporate that into the judgment just to be sure it's all here.

Ms. Vanhoose, I want you to listen real carefully. The clerk of the Court is about to give you some information regarding your right to appeal. I will give you a copy of this to keep for your records, and I'm going to give a copy to you and Mr. Curtis and ask you to sign it and return it to the Court to serve as evidence that it was given to you here in open court. Listen carefully.

(The form entitled "Court's Advice of Right to Appeal"

was read aloud in open court by the clerk, and said form was signed by the defendant.)

THE COURT: Mr. Curtis, yes?

MR. CURTIS: Judge, I have advised her of her right to appeal, likewise, 14 days from the date of the judgment.

Let the record reflect that she is signing it in open court.

THE COURT: It shall so reflect. And the form will be filed in the record.

Ms. Edwards, is there anything for the government today?

MS. EDWARDS: Nothing further from the government, Your Honor.

THE COURT: Thank you. I hope you all get your flight back home tonight with this weather.

MS. EDWARDS: Thank you, Your Honor.

THE COURT: Mr. Curtis?

MR. CURTIS: No, Your Honor. Thank you.

THE COURT: I heard you had a slick ride in too.

MR. CURTIS: I definitely did. And it took me an hour -- when I was within three miles of the 75 interchange, it took me an hour.

THE COURT: Well, everybody please be careful in your travels home. I think it's supposed to improve over the course of the day.

MR. CURTIS: 64 is bad.

THE COURT: Thank you.

MR. CURTIS: Thank you, Your Honor.

THE COURT: Thank you all very much.

(Proceedings concluded at 10:29 a.m.)

\- - -

C E R T I F I C A T E

I, LAUREN I. GOOTEE, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled case.

_/s/ Lauren I. Gootee
LAUREN I. GOOTEE, RMR, CRR
Official Court Reporter

July 9, 2026
Date of Certification